IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 16-cv-00553-RBJ

DARRELL L. JONES,

     Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,

     Defendant.

---

ORDER

---

This matter is before the Court on review of the Social Security Administration ("SSA") Commissioner's decision denying claimant Darrell Lionel Jones' application for disability insurance benefits ("DIB") under Title II of the Social Security Act and for supplemental security income ("SSI") under Title XVI. Jurisdiction is proper under 42 U.S.C. § 405(g). For the reasons explained below, the Court AFFIRMS the Commissioner's decision.

### I. STANDARD OF REVIEW

This appeal is based upon the administrative record and the parties' briefs. In reviewing a final decision by the Commissioner, the District Court examines the record and determines whether it contains substantial evidence to support the Commissioner's decision and whether the Commissioner applied the correct legal standards. *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996). A decision is not based on substantial evidence if it is "overwhelmed by other

evidence in the record." *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988). Substantial evidence requires "more than a scintilla, but less than a preponderance." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Evidence is not substantial if it "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). In addition, reversal may be appropriate if the Commissioner applies an incorrect legal standard or fails to demonstrate that the correct legal standards have been followed. *Winfrey*, 92 F.3d at 1019.

## II. BACKGROUND

Mr. Jones was born on March 29, 1957. R. 27. He has a limited education but speaks English. *Id.* Within the past fifteen years Mr. Jones has worked as a warehouse worker at a noodle company. *Id.* However, since his amended, alleged disability onset date of August 21, 2009 he has not held substantial gainful employment. R. 13.

Mr. Jones suffers from numerous health conditions, including a history of right leg fracture, gout, hypertension and abdominal aortic arthrosclerosis, degenerative disc disease, shoulder and arm pain, diabetes, mood disorder not otherwise specified ("NOS") with anxiety, psychotic disorder NOS, alcohol dependency, mild cataracts, and refractive amblyopia. R. 13–14. He alleges that some of these conditions, namely his psychological disorders and alcohol dependence, began shortly after his wife passed away on January 9, 2009. *See* R. 110–11. Some of his other ailments, including gout, hypertension, abdominal aortic arthrosclerosis, degenerative disc disease, shoulder and arm pain, and diabetes are either minor conditions or are well-controlled with medications. *See* R. 14.

### A. Procedural History.

In March of 2012 Mr. Jones filed for DIB and SSI, alleging disability beginning July 1, 2002. R. 294–302. His claims were initially denied on January 3, 2013. R. 141. Later that month plaintiff filed a request for a hearing. R. 186–88. That hearing was held before Administrative Law Judge ("ALJ") Jennifer A. Simmons on October 31, 2013, during which time plaintiff amended his alleged disability onset date to August 21, 2009. R. 11, 77–140. A supplemental hearing was held on February 6, 2014. R. 37–76. The ALJ subsequently denied plaintiff's application on May 27, 2014. R. 8–29. Plaintiff then filed a request for review with the Appeals Council on July 7, 2014. R. 6–7. His request was denied on September 4, 2015. R. 1–3. Mr. Jones then filed his case in this court on March 7, 2016. ECF No. 1.

### B. The ALJ's Decision.

The ALJ issued an unfavorable decision after evaluating the evidence according to the SSA's standard five-step process. R. 11–29. First, the ALJ found that Mr. Jones had not engaged in substantial gainful activity since his alleged onset date of August 21, 2009. R. 13. At step two, the ALJ found that Mr. Jones had the severe impairments of: "history of right leg fracture; mood disorder not otherwise specified (NOS) with anxiety; psychotic disorder NOS; alcohol dependency; mild cataracts and refractive amblyopia." *Id.* At step three, the ALJ concluded that Mr. Jones did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R., Part 404, Subpart P, Appendix. R. 14.

The ALJ then found that Mr. Jones retained the residual functional capacity ("RFC") to perform "medium work" as defined by 20 C.F.R. § 404.1567(c) and § 416.967(c) with the following limitations:

> [T]he claimant can frequently climb, balance, knee [sic], crouch, crawl, and/or stoop; he has the capacity for frequent vision in the areas of far acuity, near acuity, accommodation and depth perceptions; he can perform simple and repetitive tasks; he cannot perform tasks requiring interaction with the public' he cannot perform tasks requiring hypervigilance; he can occasionally perform tasks requiring teamwork; [and that] he should have no responsibility for the safety of others.

R. 16; 20 C.F.R. § 404.1567(c) ("Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work."); 20 C.F.R. § 416.967(c) (same).

At step four, the ALJ concluded that Mr. Jones is capable of performing his past relevant work as a warehouse worker because this job would not require plaintiff to perform any work or work-related activities that his RFC precluded. R. 27. Finally, at step five, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Mr. Jones could perform, such as a meat clerk, dishwasher, and warehouse worker. R. 28. Accordingly, the ALJ found that Mr. Jones was not disabled. *Id.*

### III. ANALYSIS

Mr. Jones argues that three parts of the ALJ's decision contain errors: (1) the ALJ's RFC determination; (2) the ALJ's step four finding that plaintiff could perform his past relevant work; and (3) the ALJ's step five findings that there were jobs that existed in significant numbers in the national economy that Mr. Jones could perform. ECF No. 33–46. However, as plaintiff

4

acknowledges, these latter two arguments for reversal turn on whether he is correct that the ALJ's RFC determination was made in error. *See* ECF No. 14 at 38; ECF No. 18 at 5. Finding that it was not, the Court affirms the ALJ's decision. I discuss each portion of the ALJ's decision plaintiff finds errors with in turn.

### A. The ALJ's RFC Determination.

As described above, the ALJ found that plaintiff retained the RFC to perform "medium work" with the following limitations:

> [T]he claimant can frequently climb, balance, knee [sic], crouch, crawl, and/or stoop; he has the capacity for frequent vision in the areas of far acuity, near acuity, accommodation and depth perceptions; he can perform simple and repetitive tasks; he cannot perform tasks requiring interaction with the public' he cannot perform tasks requiring hypervigilance; he can occasionally perform tasks requiring teamwork; [and that] he should have no responsibility for the safety of others.

R. 16. Relevant here, Social Security Ruling ("SSR") 83-10 defines medium work as requiring "standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds." *See* 1983 WL 31251, at *6.

Plaintiff argues the ALJ made three main errors with respect to this RFC determination. First, he argues that the ALJ's conclusion that Mr. Jones could perform "medium work" was erroneous. On this first point, he has three sub-arguments: the RFC determination is overwhelmed by contradictory evidence in the record, the ALJ improperly evaluated the medical opinions in the record in forming it, and it appears the ALJ improperly relied on the opinion of the Single Decision-Maker ("SDM"). ECF No. 14 at 33–37. Mr. Jones' second main contention is that the ALJ improperly failed to account for any functional limitation related to plaintiff's

psychosis in crafting her RFC. *Id.* at 37–38. Finally, plaintiff argues that the ALJ's visual limitations contained within the RFC are erroneous. *Id.* at 38–41. For the reasons discussed below, however, I find none of these arguments convincing.

### 1. **Substantial Evidence Supports the ALJ's "Medium Work" Finding and the ALJ did not Improperly Evaluate Medical Opinions or Rely on the SDM's Opinion.**

First, I disagree with plaintiff that the ALJ's "medium work" finding was made in error. As the ALJ correctly noted, while the objective medical evidence in the record reveals that plaintiff occasionally suffered pain and discomfort in his lower extremities, hips, and back, he was not severely limited in his ability to stand or walk during a typical work day. The vast majority of the tests conducted on plaintiff for these and related conditions during his period of alleged disability bear this out. *See, e.g.*, R. 46 ("[T]he two orthopedic consultations . . . [t]hey both show pretty good range of motion of the right hip generally[.]"), R. 48 ("I think the lumbar spine has no -- no medical problem at all."), R. 49 ("[T]he two orthopedic exams, for example, in January of 2012 showed normal range of motion and full strength and bilateral upper extremities and lower extremities[.]"), R. 475 (5/5 strength in all extremities), R. 673 ("No red flags found today on [plaintiff's back and leg pain] exam."), R. 674 ("No deficits found on exam today.").

This evidence includes the evaluations conducted by Dr. Berit Amundson, see R. 401–10, Dr. Linda Mitchell, see R. 468–76, and Dr. Eric Traister, see R. 66–74, parts of which are cited above and which are discussed again below, as well as the testimony by medical expert Dr. Don Clark who reviewed the record and explained at plaintiff's hearing that his tests and evaluations were almost uniformly normal, see R. 46–49. To be fair, this evidence reveals that plaintiff had *some* limitation in his ability to stand or walk during a typical eight-hour workday. However, I find that the ALJ's "medium work" limitation, which restricts plaintiff to a maximum of six

hours of standing or walking with normal breaks in an eight-hour workday, adequately accounts for this. Accordingly, I conclude that substantial evidence backs up the ALJ's "medium work" RFC determination. I therefore disagree with plaintiff's first argument that this finding is overwhelmed by contrary evidence in the record.

Similarly, I find plaintiff's second argument on this point unpersuasive. To reiterate, that argument is that the ALJ improperly rejected the medical opinions of all three consultative evaluating physicians (Drs. Amundson, Mitchell, and Traister), as well as the medical expert (Dr. Clark) who testified at plaintiff's February 2014 hearing. All of these doctors, plaintiff points out, found that plaintiff should have more severe limitations regarding his ability to stand or walk during an eight-hour workday. *See* R. 46–49, 66–74, 401–10, 468–76.

Aside from the fact that plaintiff is incorrect that the ALJ disregarded *all* of these opinions, since she assigned Dr. Amundson's six-hour standing or walking restriction with somewhat frequent breaks "some weight" after finding that it was "generally consistent with the relatively benign objective finding[s] in the examination report and in other treatment records[,]" see R. 23, I find that the ALJ nonetheless properly evaluated all of these opinions in the record according to the relevant legal standards.[1]

As the Tenth Circuit has made clear, while an ALJ must assess all medical opinions in the record using the six factors spelled out in SSR 96-2p and 20 C.F.R. § 404.1527(c), an ALJ does *not* need to reference all of these factors when so doing. *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). Rather, a court should affirm the ALJ's treatment of the medical opinions in the record when the ALJ makes clear what weight she assigns to each opinion and

---

[1] There were no opinions by "treating" physicians in this case.

supports those findings with clear reasoning supported by substantial evidence in the record. *See id.*; *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). The ALJ did so here.

First, as noted above, the ALJ gave clear reasons for giving Dr. Amundson's six-hour limitation "some weight," and I find that her reasons are supported by substantial evidence in the record. *See supra*. Furthermore, she properly evaluated the opinions of Drs. Mitchell, Traister, and Clark, noting in her decision that she assigned the physical limitations contained within all three of these opinions "little weight" since they were internally inconsistent, and because these limitations clashed with the other objective medical evidence in the record. *See* R. 23–25. Such reasoning is supported by substantial evidence.

For instance, the evaluations done by Drs. Mitchell and Traister by their own descriptions returned many normal results, see R. 468–76, R. 66–74, and Dr. Clark testified that many of claimant's physical impairments were not severe despite opining that he needed a somewhat severe standing or walking limitation of four hours maximum, R. 26, 46. Furthermore, the other medical evidence in the record reveals generally minor findings regarding plaintiff's conditions affecting his ability to stand or walk that do not support the very serious limitations contained within the doctors' opinions. *See, e.g.*, R. 767–68. For these reasons, the ALJ did not err in rejecting these medical opinions. *See, e.g.*, *Vigil v. Colvin*, 805 F.3d 1199, 1202 (10th Cir. 2015) ("The ALJ's finding that [the doctor's] restrictions on standing and walking were inconsistent with his own examination findings is a good reason for giving that medical opinion" less weight).

Similarly, no error occurred with the ALJ's assessment of Dr. Gawo's opinion to which she gave "significant weight" in crafting her RFC determination. *See* R. 26. The ALJ explained

that she assigned greater weight to Dr. Gawo's opinion than the other ones contained within the record because he supported his findings with "the objective evidence related to the claimant's musculoskeletal complaints, including imaging and physical examination results" that he noted were "relatively benign throughout the alleged disability period[.]" *See* R. 26, 767–68. Substantial evidence supports this reasoning too. *See* R. 767–68. (summarizing the numerous relatively normal test results contained in the medical record).

Finally, I find unconvincing plaintiff's third argument that the ALJ improperly relied on the SDM's opinion in forming her own RFC. While plaintiff is right that an ALJ cannot give the SDM's opinion *itself* weight in her decision, see *Ky v. Astrue*, No. 08-cv-00362-REB, 2009 WL 68760, at *3 (D. Colo. Jan. 8, 2009), the ALJ did not do here. Rather, she gave weight to a medical opinion *adopting* the SDM's limitations. *See* R. 26. That was valid.[2] *See, e.g.*, *Holley v. Colvin*, No. CIV.A. 12-4057-JWL, 2014 WL 172183, at *8 (D. Kan. Jan. 15, 2014) (unpublished) ("Thus, Dr. Siemsen adopted [the SDM's RFC assessment] as his own, and it became his medical findings and analysis as surely as if he had written it himself.").

### 2. The ALJ's Mental RFC was not Erroneous.

Next, I find unavailing plaintiff's argument that the ALJ's RFC determination does not account for the limiting effects of plaintiff's psychosis. Plaintiff contends that despite finding that his psychosis was deemed a "severe impairment," the ALJ committed errors by failing to

---

[2] While plaintiff is right to point out that the ALJ's treatment of Dr. Gawo's opinion is confusing in some respects, for instance, because she notes that she gave "significant weight" to his opinion that plaintiff was capable of "light exertional level work" (not medium work), see R. 26, I find that any confusion or errors do not warrant reversal here because the ALJ's ultimate RFC determination is supported by substantial evidence in the record. *See supra*; *Howard*, 379 F.3d at 949 (explaining that despite confusing analysis "leading up to the ALJ's RFC determination" that the court affirmed the agency's denial of benefits in any event "because . . . substantial evidence supports the ALJ's decision and the correct legal standards were applied").

assign any restrictions based on it and by failing to account for plaintiff's need to be "off task more than ten percent of the work day" due to his hallucinations. ECF No. 14 at 32. I disagree.

In her RFC determination, the ALJ required that plaintiff only perform "simple and repetitive tasks;" that he not "perform tasks requiring interaction with the public;" and that he not "perform tasks requiring hypervigilance[.]" R. 16. These restrictions appear to be adopted from the limitations described by David M. Glassmire, Ph.D. in his testimony on the limiting effects stemming from plaintiff's mental conditions *including* his psychosis. *See* R. 86– 87, R. 22–23 (assigning Dr. Glassmire's opinion "great weight"). Thus, I find plaintiff's argument that the ALJ did not add *any* limitations related to his psychosis is simply without merit.

Second, as defendant correctly points out, the medical opinions in the record regarding plaintiff's psychological conditions did not include any limitation that plaintiff needs to be "off task" for a certain percentage of the day due to his hallucinations from his psychosis. If anything, they showed that plaintiff's ability to concentrate was either mildly limited or not limited at all. *See, e.g.*, R. 467 (Dr. Lowell-Tupa's opinion) ("Claimant's ability to sustain concentration and to persist in completing routine daily and work-related tasks may be *mildly* impaired due to some characterological issues and depressive symptoms.") (emphasis added); R. 682 (Dr. Bradley's opinion) ("The claimant's ability to sustain concentration and to persist in completing routine daily and work-related tasks is not impaired."). Thus, I find substantial evidence supports the ALJ's decision not to assign a limitation based on this alleged symptom.

### 3. Substantial Evidence Supports the ALJ's Visual Limitations.

Finally, I disagree with plaintiff's contention that substantial evidence does not support the ALJ's visual limitations contained within her RFC determination. The ALJ determined that

plaintiff had "capacity for frequent vision in the areas of far acuity, near acuity, accommodation and depth perception[.]" R. 16. She partially based these limitations on plaintiff's own testimony that he was capable of reading fine print with reading glasses, R. 122, and that he could perform other activities such as watching television and riding public transportation, R. 395–96. The ALJ also found that this evidence rendered plaintiff's claims about the severity of his visual impairments not entirely believable.[3] I find substantial evidence supports such findings, primarily because the severity of plaintiff's vision problems appears to vary widely in the record based on when plaintiff was examined (given that his other conditions, namely diabetes, appear to affect his vision somewhat), who examined him, and whether or not he was wearing glasses to enable an assessment of plaintiff's "best corrected vision."[4] *See, e.g.*, R. 54–61.

### B. The ALJ's Step Four Finding was not Made in Error.

As mentioned above, plaintiff's arguments for reversal hinge on this Court finding that the ALJ's RFC determination was erroneous. *See* ECF No. 14 at 38 (arguing that the ALJ's erroneous RFC determination "contributed" to her erroneous step four finding). Having found the ALJ's RFC determination was proper, the Court finds unconvincing plaintiff's argument that

---

[3] The ALJ crafted her visual limitations based on the opinions of numerous doctors, including Dr. Neiel Baronberg. R. 25. Dr. Baronberg did not specifically opine on plaintiff's work-related vision, but nonetheless noted that plaintiff appeared to have significantly diminished vision. *See id.*; R. 925. The ALJ gave Dr. Baronberg's evaluation "some weight in establishing that the claimant does have significant visual deficits." R. 25. To the extent plaintiff challenges the legal standards the ALJ applied in evaluation these opinions, the Court finds that the ALJ properly evaluated them largely for the same reasons noted *supra* Part III.A.1.

[4] The most recent opinion in the record regarding plaintiff's vision appears to be that of Dr. Clark who testified at plaintiff's February 2014 hearing. R. 25. Dr. Clark opined that the record had significant variations regarding plaintiff's recorded visual acuity. R. 54–61. He nevertheless noted that plaintiff's vision could improve if he consistently used glasses, possibly even to the point where he could drive and have the visual acuity for *any* kind of work. *See* R. 57.

the ALJ erred by finding that he can perform his past relevant work as a warehouse worker. This is especially true because, even granting to plaintiff that the ALJ erred by not assigning plaintiff an additional limitation on his far acuity, plaintiff would still be able to perform his past relevant work as a warehouse worker since this job does not require far acuity. *See* DOT No. 922.687-058, 1991 WL 688132.

### C. The ALJ's Step Five Findings were not Made in Error.

Plaintiff's step five arguments are similarly unavailing because, as plaintiff readily acknowledges, they require this Court to find that the ALJ's RFC determination was erroneous. ECF No. 18 at 5. However, plaintiff's arguments on step five are also unpersuasive because one of the jobs the ALJ found plaintiff could perform—a dishwasher—does not require *either* near acuity or far acuity: the two additional limitations plaintiff argues the ALJ erred by not assigning him and that led to erroneous step five findings. *See* DOT No. 318.687-010, 1991 WL 672755. Thus, I find all of plaintiff's arguments do not warrant reversal of the ALJ's decision denying him DIB and SSI benefits.

## ORDER

Plaintiff appears to be a person in need of a leg up. However, my job is not to reweigh the evidence to determine who is deserving of government assistance and who is not. Rather, I must decide whether or not the ALJ applied the correct legal standards and arrived at a decision regarding an applicant's disability that is supported by substantial evidence in the record. Finding that the ALJ did both here, the Court AFFIRMS the Commissioner's decision.

However, I must point out that after deciding countless social security appeals, I am of the belief that the government could save everyone a whole lot of time, energy, and money by

simply providing some form of basic assistance to people like Darrell Jones, rather than expending exorbitant resources to deny them. I understand that this is not the disability insurance or social security program we have. Nevertheless, I say this out of frustration about what often seems to have become a misappropriation of taxpayer resources.

DATED this 30th day of January, 2017.

BY THE COURT:

*[signature: Brooke Jackson]*

_____
R. Brooke Jackson
United States District Judge